UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THADDEUS WHITE, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>       v.<br><br>JUST ENERGY GROUP INC., PATRICK MCCULLOUGH, and JIM BROWN,<br><br>       Defendants. | Case No. 1:19-cv-08236-JGK |

**JUST ENERGY GROUP'S MEMORANDUM OF LAW IN
OPPOSITION TO LEAD PLAINTIFF GREGORY GUTMAN'S
MOTION TO TRANSFER**

**BOIES SCHILLER FLEXNER LLP**

Jason Cyrulnik
Motty Shulman
333 Main Street
Armonk, New York 10504
914.749.8200
jcyrulnik@bsfllp.com
mshulman@bsfllp.com

*Counsel for Defendant Just Energy Group Inc.*

# CONTENTS

Contents ................................................................................................................... i

Table of Authorities ............................................................................................... ii

Introduction............................................................................................................. 1

Argument ................................................................................................................ 2

    A.    The First-Filed Rule Establishes a Strong Presumption in Favor of New York .............. 2

    B.    The Balance of Convenience Favors New York.................................................... 3

        1.    Convenience of Witnesses...................................................................... 4

        2.    Location of Relevant Documents and Relative Ease of Access to Proof.................... 6

        3.    Convenience of the Parties .................................................................... 7

        4.    Locus of Operative Facts...................................................................... 8

        5.    Availability of Process to Compel Attendance of Unwilling Witnesses.................... 9

        6.    Relative Means of the Parties ................................................................. 9

        7.    Forum's Familiarity with Governing Law.................................................... 9

        8.    Weight Accorded to a Plaintiff's Choice of Forum........................................ 10

        9.    Trial Efficiency and the Interests of Justice ............................................... 11

    C.    Special Circumstances Reinforce the First-Filed Rule and Favor New York................ 13

Conclusion ............................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Blass v. Capital Int'l Sec. Grp.*,
No. 99-CV-5738 (FB), 2001 WL 301137 (E.D.N.Y. Mar. 23, 2001) ...................................... 6

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975)................................................................................................................ 13

*Brozoski v. Pfizer, Inc.*,
No. 00 CIV. 4215(SWK), 2001 WL 618981 (S.D.N.Y. June 6, 2001) .................................... 9

*ESPN v. Quiksilver, Inc.*,
581 F. Supp. 2d 542 (S.D.N.Y. 2008) ................................................................................... 10

*Garity v. Tetraphase Pharm.*,
No. 1:18-cv-06797 (ALC), 2019 WL 2314691 (S.D.N.Y. May 30, 2019) .......................... 9, 10

*Greenwood Partners v. New Frontier Media*,
No. 99 Civ. 9099 WK, 2000 WL 278086 (S.D.N.Y. Mar. 14, 2000)....................................... 6

*IBJ Schroder Bank & Tr. v. Mellon Bank*,
730 F. Supp. 1278 (S.D.N.Y. 1990) ....................................................................................... 6

*In re Hanger Orthopedic Grp. Sec. Litig.*,
418 F. Supp. 2d 164 (E.D.N.Y. 2006) ..................................................................................... 5

*In re Nematron Corp. Sec. Litig.*,
30 F. Supp. 2d 397 (S.D.N.Y. 1998) ....................................................................................... 6

*In re Warrick*,
70 F.3d 736 (2d Cir. 1995) ................................................................................................... 10

*Janbay v. Canadian Solar*,
272 F.R.D. 112 (S.D.N.Y. 2010) ................................................................ 3, 5, 7, 8, 9, 10, 13

*Langley Partners v. Tripath Tech.*,
No. 05 Civ. 5255, 2005 WL 2482527 (S.D.N.Y. Oct. 6, 2005) ................................................ 6

*Liberty Mut. Ins. v. Fairbanks Co.*,
17 F. Supp. 3d 385 (S.D.N.Y. 2014) ............................................................................ 2, 3, 13

*Local Union No. 3. Int'l Bhd. of Elec. Workers, AFL-CIO v. Gen. Elec. Int'l*,
No 10 CV. 7319(BSJ), 2011 WL 1842239 (S.D.N.Y. May 9, 2011)....................................... 7

*Mazuma Holding Corp. v. Bethke*,
1 F. Supp. 3d 6 (E.D.N.Y. 2014) ........................................................................................... 9

*Morrison v. Nat'l Austl. Bank*,
    561 U.S. 247 (2010)..................................................................................................... 13

*O'Hopp v. ContiFinancial*,
     88 F. Supp. 31 (E.D.N.Y. 2000) ................................................................................. 5

*Rubinstein v. Skyteller, Inc.*,
    48 F. Supp. 2d 315 (S.D.N.Y. 1999) ......................................................................... 6

*Semmes Motors v. Ford Motor Co.*,
    429 F.2d 1197 (2d Cir. 1970) ........................................................................ 11, 12, 13

*State Farm Mut. Auto. Ins. v. Plunkett*,
    No. 1:10CV184-SA-JAD, 2011 WL 2670063 (N.D. Miss. July 7, 2011).......................... 11, 12

*U.S. Commodity Futures Trading Comm'n v. Wilson*,
    27 F. Supp. 3d 517 (S.D.N.Y. 2014) ......................................................................... 6

*Williams Advanced Materials v. Target Tech.*,
    No. 03-CV-276-A, 2007 WL 2245886 (W.D.N.Y. Aug. 1, 2007)......................................... 13

**Statutes**

28 U.S.C. § 1404(a) ......................................................................................................... 2

Defendant Just Energy Group Inc. submits this memorandum of law in opposition to lead plaintiff Gregory Gutman's motion to transfer this case to the Southern District of Texas.

## INTRODUCTION

Four separate shareholders of Just Energy filed putative class actions based on certain corrective statements Just Energy issued in the summer of 2019.  The first three cases were filed in the Southern District of New York, a judge was assigned and a magistrate judge designated on August 1, 2019, and the cases were moving forward in this Court as related cases on the same schedule.  Gutman filed the fourth and latest-filed action in the Southern District of Texas:

| Plaintiff | Date filed | Venue | Case Number |
|-----------|-----------|-------|-------------|
| Goitein | July 31, 2019 | S.D.N.Y. | 1:19-cv-07181-JGK |
| White | Sept. 4, 2019 | S.D.N.Y. | 1:19-cv-08236-JGK |
| Brodeur | Sept. 5, 2019 | S.D.N.Y. | 1:19-cv-08286-JGK |
| Gutman | Sept. 12, 2019 | S.D. Tex. | 4:19-cv-03449 |

On September 30, 2019, Gutman filed a motion in the *Goitein* case seeking to consolidate and act as lead plaintiff for all three New York actions, and filed a motion to act as lead plaintiff in the Texas action.  On November 18, 2019, Gutman filed a motion in all three New York cases seeking to transfer them to the Southern District of Texas.  Two days later, on November 20, 2019, plaintiff Goitein voluntarily dismissed his New York action.  The next day, November 21, 2019, plaintiff Brodeur voluntarily dismissed his New York action.  That same day, this Court held an initial conference, set a briefing schedule for Gutman's transfer motion in this remaining New York case, and indicated that this Court, as the first-filed court, expected to be afforded the opportunity to decide the transfer issue before any proceeding in Texas advanced.

In the interests of justice and efficiency, Just Energy respectfully requests that the Court deny Gutman's motion to transfer this action to the Southern District of Texas.

**ARGUMENT**

This case is ill-suited for transfer under 28 U.S.C. § 1404(a), which states that for "the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Transfer is not warranted here.  There is no dispute that this action can be brought in New York, as the first-, second-, and third-to-file shareholder plaintiffs chose to do.  The first-filed rule thus establishes a strong presumption in favor of New York.  The presumption in favor of the first-filed forum is even stronger than usual in the circumstances here, where the last-filed action was brought a month-and-a half after a judge was appointed in the first action, creating an opportunity for judge-shopping if the second-filed action were given priority.  In addition, New York is a more appropriate forum:  it is centrally located to the witnesses and documents, which are principally located in Toronto, London, and Houston, with third-party witnesses from Just Energy's independent auditor located in Toronto and potentially New York.

**A.  The First-Filed Rule Establishes a Strong Presumption in Favor of New York**

This case should remain in New York under the first-filed rule because the first three out of four cases were filed in New York.  The first-filed rule establishes a "strong presumption" that "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second."  *Liberty Mut. Ins. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 392, 400 (S.D.N.Y. 2014) (quoting *First City Nat'l Bank & Tr. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989)).

To determine whether two actions represent "competing lawsuits," the "core question is whether there are common violations of law alleged."  *Liberty Mut.*, 17 F. Supp. 3d at 393 (quotation marks omitted).  Here, all three first-filed New York actions alleged common

violations with the Texas action. All plaintiffs' allegations are effectively identical, and all assert the same two causes of action, under Sections 10(b) and 20(a) of the Exchange Act. *Cf.* Lead Pl. Mot., *Gutman v. Just Energy*, No. 4:19-cv-03449 (S.D. Tex. Sept. 30, 2019), Dkt. 14 at 2 (Texas action "asserts similar facts and claims" as the New York action).

Thus, unless Gutman can show a balance of convenience or special circumstances sufficient to overcome the strong presumption in favor of the first-filed suit, transfer should be denied. As discussed below, Gutman can show neither a balance of convenience favoring the Southern District of Texas nor special circumstances favoring that forum. Rather, convenience favors New York, and no special circumstances warrant departure from the first-filed rule. If anything, the circumstances weigh more heavily than usual in favor of honoring the first-filed rule, including from a public policy perspective, to prevent the appearance and risk of judge-shopping. Gutman therefore cannot overcome the strong presumption in favor of New York.

**B.  The Balance of Convenience Favors New York**

Gutman does not show that the balance of convenience favors Texas. The party seeking transfer bears the burden of making a "clear and convincing showing" that the balance of convenience favors transfer. *Janbay v. Canadian Solar*, 272 F.R.D. 112, 122 (S.D.N.Y. 2010) (quotation marks omitted). Although the movant's burden is higher, the factors relevant to the balance-of-convenience under the first-filed rule "are essentially the same" as the convenience factors considered in connection with transfer motions generally. *Liberty Mut.*, 17 F. Supp. 3d at 395; *cf. Janbay*, 272 F.R.D. at 121-22 (listing nine convenience factors in transfer analysis). New York is superior or neutral compared to Texas with respect to every relevant factor.

3

### 1. *Convenience of Witnesses*

This putative shareholder class action concerns an Ontario-based company traded in the U.S. on the NYSE.  Plaintiffs' allegations attack the company's disclosures about its business in the U.K. and Texas.  New York is a geographic nexus for the locations of witnesses, who are likely to come principally from Just Energy's corporate headquarters in Mississauga, Ontario (near Toronto), as well as its offices in the markets that were the subject of Just Energy's corrective statements:  the U.K. and Texas.  *See, e.g.*, Dkt. 14-2, at page 6 of 73 (Just Energy 2018 annual meeting held at Toronto stock exchange); Dkt. 1, Compl. ¶¶ 35-38 (allegations regarding Just Energy's "operational and collection issues in its United Kingdom (U.K.) market"); ¶¶ 32-33, 35-38 (allegations regarding Just Energy's "doubtful accounts in its Texas residential market").  Just Energy's financial statements and press releases were issued from Toronto relating to the U.K. and Texas energy markets.  New York is a central location for each of Toronto, London, and Houston; and New York is more accessible to Toronto and London.

Gutman's motion misleadingly depicts this case as arising "from the Company's Texas operations" (Mot. 7) and studiously avoids the complaint's numerous allegations related to Just Energy's U.K. operations—even though U.K. market issues involved larger restatements of the company's financials than its U.S. business.  *See* Dkt. 1, Compl. ¶ 35 (company disclosed adjustments of $74.1 million for U.K. and $58.6 million for Texas), ¶ 37 (company disclosed adjustments of $57.5 million for U.K. and $53.7 million for Texas).  Gutman says it is "possible" that "some events occurred in Ontario, Canada where Just Energy's worldwide headquarters are located" (Mot. 8)—even though it is obvious that relevant events occurred in Ontario.

Indeed, Gutman misrepresents that Just Energy's statements were prepared and issued in Texas (Mot. 6), even though the statements state on their face that they were issued in Toronto,

Ontario.  *See* May 16, 2018 Press Release cited at Compl. ¶ 21, available at

https://bit.ly/38oocEN; Aug. 8, 2018 Press Release cited at Compl. ¶ 23, available at

https://bit.ly/38t5coz; Nov. 7, 2018 Press Release cited at Compl. ¶ 25, available at

https://bit.ly/2RJzspa; Feb. 6, 2019 Press Release cited at Compl. ¶ 27, available at

https://bit.ly/2E9pTI9; July 23, 2019 Press Release cited at Compl. ¶ 32, available at

https://bit.ly/2PFjZUs; Aug. 15, 2019 Press Release cited at Compl. ¶ 35, available at

https://bit.ly/38uwbjC.  Similarly, Just Energy's financial statements state that they were

prepared in accordance with the International Financial Reports Standards (IFRS), the applicable

Canadian standards, rather than Generally Accepted Accounting Principles (GAAP) used in the

U.S.  *See* Just Energy Form 40-F/A Ex. 1.3 § 3(a) (Aug. 20, 2019), available at

https://bit.ly/38nhKOa.  Gutman's willingness to distort the facts in an attempt to transfer this

case is cause for concern.

Despite bearing the burden to justify transfer, Gutman does not identify any specific

non-party witnesses located in Texas.  Generalized statements that unspecified witnesses

"maintain offices" or that allegations are based on "conduct that occurred within" a district are

insufficient.  *See Janbay*, 272 F.R.D. at 122 (movant's "lack of information regarding specific

witnesses" contributed to denial of transfer).

Further, Gutman contends that it is "common" to transfer securities class actions to the

district "where the corporate defendant [is] headquartered" (Mot. 6).  But unsurprisingly, the

case Gutman relies upon—and, in turn, all the cases string-cited by that case—involved a

transfer on the defendant's motion, not a plaintiff's.  *See In re Hanger Orthopedic Grp. Sec.

Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006); *see also O'Hopp v. ContiFinancial*, 88 F.

Supp. 31, 32-33 (E.D.N.Y. 2000); *Blass v. Capital Int'l Sec. Grp.*, No. 99-CV-5738 (FB), 2001

5

WL 301137, at *1 (E.D.N.Y. Mar. 23, 2001); *Langley Partners v. Tripath Tech.*, No. 05 Civ. 5255, 2005 WL 2482527, at *1 (S.D.N.Y. Oct. 6, 2005); *In re Stillwater Mining Co. Sec. Litig.*, No. 02 Civ. 2806, 2003 WL 21087953, at *1 (S.D.N.Y May 12, 2003); *Greenwood Partners v. New Frontier Media*, No. 99 Civ. 9099 WK, 2000 WL 278086, at *1 (S.D.N.Y. Mar. 14, 2000); *Rubinstein v. Skyteller, Inc.*, 48 F. Supp. 2d 315, 318, 325 (S.D.N.Y. 1999); *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 400-02 (S.D.N.Y. 1998); *IBJ Schroder Bank & Tr. v. Mellon Bank*, 730 F. Supp. 1278, 1279 (S.D.N.Y. 1990).

Moreover, Gutman's contention that "[n]o party has identified any witnesses in New York" (Mot. 7) is wrong. Because this case involves allegations of "materially false or misleading statements about Just Energy's financial results and internal controls" (Dkt. 1, Compl. ¶ 41) and the company's subsequently restated financials, Just Energy's independent auditor is likely to be a significant witness in the case. Indeed, in the companion Canadian litigation, Just Energy's independent auditor is a named defendant. Just Energy's independent auditor during the relevant period was Ernst & Young (operating out of its Toronto office); in the U.S., Ernst & Young is headquartered in New York. Dkt. 14-2, at page 14 of 73. Thus, for example, to the extent a corporate representative of Ernst & Young may be compelled to testify at trial, that representative would likely come from its headquarters in New York. The "convenience of non-party witnesses is accorded more weight than that of party witnesses." *U.S. Commodity Futures Trading Comm'n v. Wilson*, 27 F. Supp. 3d 517, 539 (S.D.N.Y. 2014).

### 2. *Location of Relevant Documents and Relative Ease of Access to Proof*

As with witnesses and as discussed above, relevant documents are likely to come principally from Just Energy's corporate headquarters in Ontario and its offices in the U.K. and Texas, as well as from Ernst & Young in Ontario and possibly its U.S. headquarters in New

York.  This factor weighs against transfer, though it is "not a significant factor" since "documents are largely electronic and can be transported easily and searched from numerous locations."  *Janbay*, 272 F.R.D. at 122.

### 3.  *Convenience of the Parties*

Gutman's argument that he "would be substantially inconvenienced" by litigating this action in New York (Mot. 7-8) deserves at most discounted weight, as the case law he relies on itself recognizes:  "the residence of a class representative is often mere happenstance, which may be discounted by a court when weighing transfer factors."  *Stillwater Mining*, No. 02 Civ. 2806, 2003 WL 21087953, at *4 (quotation marks omitted).  Gutman's suggestion that he would have to "travel to New York" for "deposition" (Mot. 7-8) is not only insufficient, but it is simply wrong:  it is routine practice for depositions to be taken where it is convenient for the witness.  *See Local Union No. 3. Int'l Bhd. of Elec. Workers, AFL-CIO v. Gen. Elec. Int'l*, No 10 CV. 7319(BSJ), 2011 WL 1842239, at *3 (S.D.N.Y. May 9, 2011) ("pre-trial discovery is not confined to the jurisdiction where the matter will be tried" and "depositions of a particular witness do not need to take place in the same jurisdiction where the trial will take place and can be taken in a location that is more convenient for the witness").  In fact, Gutman does not even reside in the Southern District of Texas, but rather in the Northern District, so would not be deposed in his home district in any event.  In the event this case were to reach trial, Gutman's testimony, if any, likely would be minimal.  *Stillwater Mining*, 2003 WL 21087953, at *4 ("when plaintiffs do not have personal knowledge about the disputed issues in the case, it is unlikely that their participation will involve lengthy testimony") (quotation marks omitted); *see also* Keven LaCroix, *Rare Securities Class Action Trial Results in Partial Verdict for Plaintiffs*, The D&O Diary (Feb. 5, 2019), available at https://bit.ly/2PEjQAy ("It is extremely rare for

securities class action lawsuits to go all the way through to a jury verdict.  Since 1996, there have been more than 5,200 securities class action lawsuits filed, but, as detailed further below, fewer than 25 cases during that time have gone to trial.").

Although Gutman makes much of Just Energy's U.S. office in Houston, New York is a more convenient forum for the company:  its headquarters are in Ontario, its independent auditor is in Ontario, and its affected markets are in both the U.K. and Texas.  *Cf. Janbay*, 272 F.R.D. at 122 (denying transfer from New York to California:  "although Canadian Solar's only United States office is in San Ramon, California, its headquarters are located in Ontario, Canada, which is closer to this district").  Gutman is in no position to proclaim, as he attempts to do (Mot. 8), that transfer to Texas would avoid "disruption to the operations" of Just Energy's business. Although Just Energy did not select New York—this forum was selected by each of the first three shareholders to file suit—New York is the significantly more convenient forum for the company.  Transfer would create more disruption for the company, not less.

### 4.  *Locus of Operative Facts*

As discussed above, the operative events in this case took place in Ontario, the U.K., and Texas.  Significantly, Just Energy's financial reporting and accounting was based in its headquarters in Ontario, and Ernst & Young's independent auditing likewise was based in Ontario.  Again, Gutman's focus on events in Texas (Mot. 8), while attempting to minimize the centrality of Just Energy's Ontario headquarters and making no mention whatsoever of the substantial allegations related to Just Energy's U.K. business, is misleading at best.  This factor weighs against transfer.

8

### 5. *Availability of Process to Compel Attendance of Unwilling Witnesses*

Gutman fails to point "to any specific witnesses to suggest that trial in New York would impede the attendance of any of their contemplated witnesses." *Janbay*, 272 F.R.D. at 123. For that reason alone, "this factor does not weigh in favor of transfer." *Id.*; *see also Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 31 (E.D.N.Y. 2014) (where, as here, party seeking transfer fails to present evidence that any witnesses will be unwilling to testify at trial, this factor "militates against transfer"); *cf. Brozoski v. Pfizer, Inc.*, No. 00 CIV. 4215(SWK), 2001 WL 618981, at *4 (S.D.N.Y. June 6, 2001) ("even if witnesses declined to testify in New York, deposition testimony is a viable alternative").

### 6. *Relative Means of the Parties*

As Gutman admits, the relative means of the parties is "a neutral factor" (Mot. 9). *Cf. Janbay*, 272 F.R.D. at 123. However, Gutman wrongly argues that proceeding in Texas "will likely reduce the costs for both sides" (Mot. 9). The opposite is true. Gutman overlooks not only witnesses from Ontario and the U.K., but also the fact that both sides' counsel are based in New York. While courts have declined to consider the location of a party's counsel in weighing the convenience of the parties or witnesses, *see, e.g.*, *Garity v. Tetraphase Pharm.*, No. 1:18-cv-06797 (ALC), 2019 WL 2314691, at *5 (S.D.N.Y. May 30, 2019), the practical reality is that litigating this case in the home forum of the parties' counsel is likely to reduce costs for both sides.

### 7. *Forum's Familiarity with Governing Law*

The governing law at issue is exclusively federal law under the Exchange Act. Both this Court and the Southern District of Texas are familiar with securities law. This factor is neutral.

9

### 8.  *Weight Accorded to a Plaintiff's Choice of Forum*

Courts "afford little weight to a plaintiff's choice of forum in a securities class action."

*Garity*, 2019 WL 2314691, at *2 (collecting cases).  "This is particularly true where, as here, the

plaintiff purports to represent a geographically dispersed class."  *Id.*  Gutman's own cited cases

(Mot. 9-10) recognize this principle.  *See In re Warrick*, 70 F.3d 736, 741 n.7 (2d Cir. 1995)

("plaintiff's choice of forum is a less significant consideration in a (here, putative) class action

than in an individual action"); *Stillwater*, 2003 WL 21087953, at *5 ("a plaintiff's choice of

forum is accorded less weight in a class action where the plaintiff may represent a 'widely

dispersed class'").

Moreover, the plaintiff's forum is not entitled to deference when "the forum chosen is not

the plaintiff's home forum."  *ESPN v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 551 (S.D.N.Y.

2008).  The Southern District of Texas is not Gutman's home forum.  He resides in Dallas, in the

Northern District of Texas.

More significantly, this factor favors denial of transfer because the first three shareholder

plaintiffs to file suit all chose New York as their forum.  This is not a circumstance in which the

plaintiff and defendant filed in competing forums.  Rather, three out of four plaintiffs agreed that

New York was a suitable choice of forum.  *See Janbay*, 272 F.R.D. at 123 (even though

securities action lead plaintiff moved to transfer from New York to California, all other plaintiffs

had filed in New York, and "therefore, this factor weighs slightly in favor of retaining

jurisdiction" in New York).  Gutman only chose a different forum for his suit a month-and-a-half

after a judge had been assigned in New York.

### 9.  *Trial Efficiency and the Interests of Justice*

The interests of justice strongly favor denying Gutman's transfer motion and proceeding with the first-filed case in New York.  The Second Circuit has long recognized that in situations where, as here, the plaintiff is effectively the same party in both actions and "prefers to press the second" action, "any exception" to giving preference to the first-filed case "would entail the danger that plaintiffs may engage in forum shopping or, more accurately, judge shopping." *Semmes Motors v. Ford Motor Co.*, 429 F.2d 1197, 1202-03 (2d Cir. 1970) (Friendly, J.); *see also State Farm Mut. Auto. Ins. v. Plunkett*, No. 1:10CV184-SA-JAD, 2011 WL 2670063, at *3 (N.D. Miss. July 7, 2011) ("Filing suit in one court while the same action is pending before another judge" will "inevitably lead to what can be seen as 'judge shopping' or 'forum shopping'").  Thus, "the instances where the second court should go forward despite the protests of a party to the first action where full justice can be done, should be rare indeed."  *Semmes*, 429 F.2d at 1203.  In fact in *Semmes*, the court acknowledged on the particular facts of the case that "if we were free to look at the situation in a vacuum," the second-filed suit was brought in the "more logical forum," but nevertheless ruled that the second-filed action should be stayed in favor of the first-filed action.  *Id.*  Here, unlike in *Semmes*, Texas is *not* the more logical forum: Gutman only tries to portray it as more logical by downplaying Just Energy's Ontario headquarters, overlooking Ernst & Young's independent audits in Ontario, and misleadingly avoiding any reference whatsoever to the numerous allegations concerning Just Energy's U.K. business.  But even if any of the convenience factors favored Gutman's requested transfer (they do not), those factors could not overcome the strong policy in favor of preventing the risk of judge or forum shopping.

11

Denying transfer will "eliminate the risk" of such judge or forum shopping.  *State Farm*, 2011 WL 2670063, at *3.  The timeline of events in these cases highlights that risk.  Gutman's Texas action was filed roughly a month-and-a-half after a judge was assigned in New York.  Three days before the initial conference before this Court, Gutman moved to transfer the three New York cases.  Two days later, on the evening before the initial conference with this Court, plaintiff Goitein voluntarily dismissed his New York case, expressly to try to move the lawsuit to Texas.  The next day, plaintiff Brodeur voluntarily dismissed his New York case as well.  Such procedural gamesmanship indicates a peculiarly strong desire to litigate this case in Texas, which cannot be explained merely by Gutman's professed charitable desire to avoid "significant disruption to the operations" of Just Energy's business (Mot. 8) or any of the other convenience factors (all of which do not favor transfer).

Beyond re-hashing his erroneous positions on the prior factors, Gutman's sole argument as to efficiency and justice is that Just Energy "would not be prejudiced by transfer" because of the "early stage in the litigation" (Mot. 10).  That argument does not support transfer.  *Cf. Semmes*, 429 F.2d at 1203 (finding "little force" in plaintiff's "observation" that the first-filed action "had been pending only a short time").  Moreover, the Texas action is at an even earlier stage:  the Court has held an initial conference in this case, while the initial conference in the Texas action is not scheduled before at least late January 2020.

Finally, New York may offer potential for efficiency, given that the Second Circuit sees more securities class actions than any other.  Cornerstone Research, *Securities Class Action Filings: 2018 Year in Review* at 35, available at https://bit.ly/348NQdb.  Indeed, the Second Circuit has long been recognized as the "'Mother Court' of securities law."  *Morrison v. Nat'l*

*Austl. Bank*, 561 U.S. 247, 276 (2010) (Stevens, J., concurring) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 762 (1975) (Blackmun, J., dissenting)).

**C.  Special Circumstances Reinforce the First-Filed Rule and Favor New York**

Gutman cannot and does not argue that any special circumstances warrant departure from the first-filed rule.  Indeed, the special circumstances here counsel even more strongly for the "strong presumption" that the first-filed action should have priority.  Generally, "special circumstances" arise when the first-filed action is the result of forum shopping or some other manipulative or deceptive behavior.  *Liberty Mut.*, 17 F. Supp. 3d at 393-94.

It is beyond doubt that Just Energy has not engaged in any forum shopping or other manipulative or deceptive behavior in bringing this action in New York—this action was filed by an adverse shareholder plaintiff.  Indeed, three separate shareholder plaintiffs independently selected New York as their forum.  *Cf. Janbay*, 272 F.R.D. at 116-17, 121, 123 (six of seven securities action plaintiffs filed in New York; court denied lead plaintiff's motion to transfer to California).

Far from overcoming the presumption of priority that goes to the first-filed action, the circumstances here strengthen and reinforce that presumption.  As discussed above, Gutman's Texas action, filed a month-and-a-half after a judge was assigned in this case, is a classic scenario for possible judge-shopping.  *Semmes*, 429 F.2d at 1202-03.  Accordingly, not only does the circumstance "fail to overcome the presumption of priority in favor of this District, it actually provides further support for maintaining priority here."  *Williams Advanced Materials v. Target Tech.*, No. 03-CV-276-A, 2007 WL 2245886, at *5-6 (W.D.N.Y. Aug. 1, 2007) (finding that motion was made under "pretense" of interest in convenience).

13

Of course, the Court need not conclude one way or the other whether Gutman's conduct and strained arguments for transfer are based on judge- or forum-shopping motives.  It is sufficient to recognize that the rules giving priority to first-filed cases properly guard against such judge- or forum-shopping, and that enforcing those rules here is particularly merited given the risks and incentives for judge- and forum-shopping under the instant circumstances.

## CONCLUSION

For the reasons above, Just Energy respectfully requests that the Court deny Gutman's transfer motion.

Dated: December 13, 2019                    Respectfully submitted,

                                            **BOIES SCHILLER FLEXNER LLP**

                                             /s/ Jason Cyrulnik
                                            Jason Cyrulnik
                                            333 Main Street
                                            Armonk, NY 10504
                                            914.749.8200
                                            jcyrulnik@bsfllp.com

                                            *Counsel for Defendant Just Energy Group Inc.*

14

## CERTIFICATION OF COMPLIANCE

I, Jason Cyrulnik, certify that Just Energy's Memorandum of Law in Opposition to Motion to Transfer Venue complies with the Individual Rules of Practice for the Honorable John G. Koeltl.  It contains 4,060 words exclusive of cover page, table of contents, table of authorities, and the signature block, and is typed double spaced, in legible font with reasonable margins, and all footnotes are double-spaced and in legible font.


Dated:  December 13, 2019                              /s/ Jason Cyrulnik

15